**Carl CROUSE, Plaintiff,**

v.

**Philip A. CREANZA and Joanne Habelt, Defendants.**

**No. 87–C–76–S.**

United States District Court, W.D. Wisconsin.

May 1, 1987.

---

Michael R. Fitzpatrick, Brennan, Steil, Ryan, Basting & MacDougall, Janesville, Wis., for plaintiff.

Richard C. Kelly, Mealy & Kelly, Whitewater, Wis., for defendants.

## ORDER

SHABAZ, District Judge.

Before the Court is the motion of the defendants to dismiss for lack of subject matter jurisdiction, or alternatively for fail-

ure to state a claim.[1] Plaintiff seeks a declaration that California state courts, and not Wisconsin state courts, have jurisdiction to decide the custody of his daughter and that defendants seek no further orders from Wisconsin courts regarding paternity or custody of the child. Plaintiff asserts that jurisdiction exists under 28 U.S.C. §§ 1331 and 1738A.

## FACTS

For purposes of this motion the Court assumes the following facts:

Plaintiff Carl Crouse is a resident of California and the natural father of Ashley Habelt, who was born on August 2, 1983, to Heidi Habelt.[2] Heidi was unmarried, a member of the United States Navy stationed in California, and was murdered in California on February 23, 1986.

Defendants Philip Creanza and Joanne Habelt are husband and wife and reside in Rock County, Wisconsin. Joanne is Heidi's sister. Ashley is now residing with defendants.

After Heidi's murder Ashley was taken into custody by juvenile authorities in California. A juvenile court in Santa Clara County, California, released Ashley to one of Heidi's brothers-in-law, John Kipper, who brought her to Wisconsin and placed her with defendants. The Wisconsin removal was pursuant to the order of the Santa Clara County Superior Court dated February 26, 1986, Case No. 90565, *In Behalf of Ashley Habelt.* Plaintiff received no notice of such poceedings.

On March 18, 1986, defendants were granted temporary guardianship over Ashley in the Rock County Circuit Court, Case No. 86–GN 35, *In the Matter of the Guardianship of Nathaniel John Habelt and Ashley Elizabeth Habelt.* Plaintiff received no notice of the proceeding.

---

1. Plaintiff has filed a motion for summary judgment which is not yet fully briefed and which goes to his claim that California rather than Wisconsin is the appropriate forum to decide the question of custody under 28 U.S.C. § 1738A.

2. Heidi was also the mother of another child, Nathan, born on March 24, 1982, who is also the subject of custody proceedings in both states. However, plaintiff is not the father of Nathan and Nathan is not mentioned in plaintiff's complaint in this Court. Nathan also resides in Wisconsin with defendants.

On April 1, 1986, plaintiff began an action in his home county, San Bernadino California for custody of Ashley, Case No. OCV38045, *Carl Bradley Crouse v. Estate of Heidi Marie Habelt.* On June 17, 1986, during a telephone conference between the two courts then exercising jurisdiction over the custody of Ashley, the California court awarded custody of Ashley to plaintiff and ordered the State of Wisconsin not to exercise jurisdiction over the custody of Ashley while proceedings continued in California. The Rock County, Wisconsin, court at the same time awarded custody of Ashley to defendants and ordered that California not exercise jurisdiction over Ashley's custody.

Other proceedings have followed and are now pending, including a finding by the California court that the Santa Clara County Court did not "decline its jurisdiction to Wisconsin."[3] Plaintiff is also apparently attempting to judicially establish that he is Ashley's father in California. Defendants have instituted proceedings in Rock County, Wisconsin, to terminate plaintiff's parental rights and to adopt Ashley.

Plaintiff filed this action on January 30, 1987, seeking to halt defendants' further actions in Wisconsin concerning Ashley's custody. Plaintiff bases his claim on the Parental Kidnapping Prevention Act of 1980 (PKPA), 28 U.S.C. § 1738A.

## MEMORANDUM

The role to be played by a federal court under the PKPA has been the subject of considerable litigation in other circuits and has resulted in conflicting decisions. Although the Supreme Court has granted certiorari to perhaps resolve the conflict, *Thompson v. Thompson*, 798 F.2d 1547 (9th Cir.1986), cert. granted, —— U.S. ——, 107 S.Ct. 946, 93 L.Ed.2d 996 (1987), it appears that arguments will not be heard until next term. *National Law Journal,* February 9, 1987, page 30.

Only the Court of Appeals for the District of Columbia has explicitly held that there is no subject matter jurisdiction in similar matters. *Rogers v. Platt*, 814 F.2d 683 (D.C.Cir.1987). The Ninth Circuit in *Thompson* held that there was subject matter jurisdiction but concluded that such a cause of action failed to state a claim. Judge Terrance Boyle in his concurring opinion in *Meade v. Meade*, 812 F.2d 1473, 1478 (4th Cir.1987), also questioned the existence of subject matter jurisdiction. Finally, both the Seventh Circuit and the District of Columbia Circuit have, in dicta, in cases involving the family law exception to diversity jurisdiction noted the absence of federal judicial remedies in the PKPA. *Lloyd v. Loeffler*, 694 F.2d 489, 493 (7th Cir.1982); *Bennett v. Bennett*, 682 F.2d 1039, 1043 (D.C.Cir.1982).

However, the Courts of Appeals for the Third, Fourth, Fifth and Eleventh Circuits have explicitly rejected arguments that the PKPA provides no federal jurisdiction and have reached the merits of claims like the one advanced here. *Flood v. Braaten*, 727 F.2d 303 (3rd Cir.1984); *DiRuggiero v. Rodgers*, 743 F.2d 1009 (3rd Cir.1984); *Hickey v. Baxter*, 800 F.2d 430 (4th Cir.1986); *Meade v. Meade*, 812 F.2d 1473 (4th Cir.1987); *Heartfield v. Heartfield*, 749 F.2d 1138 (5th Cir.1985); *McDougald v. Jenson*, 786 F.2d 1465 (11th Cir.1986).

■ This Court is convinced that *Rogers* was correctly decided and that the majority of the circuits have chosen to seek efficiency and finality at the expense of rigorous jurisdictional analysis. It is essential to recognize that federal courts are courts of limited jurisdiction, jurisdiction delineated by Congress, and that efficiency is not necessarily the only consideration. *Aldinger v. Howard*, 427 U.S. 1, 96 S.Ct. 2413, 2420, 49 L.Ed.2d 276 (1976).

---

**3.** Although it is not immediately apparent, the Court assumes that the significance of this phrasing lies in its connection with 28 U.S.C. § 1738A(f)(2):

> (f) A court of a State may modify a determination of custody of the same child made by a court of another State, if—
>
>    *    *    *    *    *    *

> (2) the court of the other State no longer has jurisdiction or it has declined to exercise such jurisdiction to modify such determination.

Presumably the San Bernadino court did not want the Santa Clara court's action to be interpreted as a decision that California was abandoning the question of Ashley's custody upon release to her uncle.

Accordingly, there must, in every case, be a statutory source of subject matter jurisdiction. Plaintiff suggests two such sources: 28 U.S.C. § 1738A itself, and 28 U.S.C. § 1331, federal question jurisdiction.

The first of these need not concern us long. Section 1738A is entitled "Full Faith and Credit Given to Child Custody Determinations." It must be conceded that the statute does not in any way mention federal courts, but instead provides a mandate to state courts to enforce the custody determinations of other state courts under the circumstances and within the framework provided in the statute. It is, in fact, an evidentiary rule as is its more general and older counterpart, 28 U.S.C. § 1738, which implements the Full Faith and Credit Clause of the Constitution, Article IV, Section 1. As written in *State of Wisconsin v. Pelican Insurance Co.*, 127 U.S. 265, 291–92, 8 S.Ct. 1370, 1375, 32 L.Ed. 239 (1888):

> Those provisions [the Full Faith and Credit Clause and the predecessor to 28 U.S.C. § 1738] establish a rule of evidence, rather than of jurisdiction. While they make the record of a judgment, rendered after due notice in one state, conclusive evidence in the courts of another state, or of the United States, of the matter adjudged, they do not affect the jurisdiction, either of the court in which the judgment is rendered, or of the court in which it is offered in evidence.

As the Court in *Rogers v. Platt*, infra, noted, the placement of § 1738A, as well as its legislative history, suggests that the statute was to be implemented as § 1738 has been for two centuries:

> The proposed statute was repeatedly and consistently described in the history as implementing a "full faith credit approach" for custody decrees. The portion of the PKPA at issue here is accordingly codified at 28 U.S.C. § 1738A as an addendum to section 1738, the statutory implementation of the constitutional full faith and credit clause....

> \* \* \* \* \* \*

> It seems highly unlikely Congress would follow the pattern of the Full Faith and Credit Clause and section 1738 by structuring 1738A as a command to state courts to give full faith and credit to the child custody decrees of other states, and yet, without comment, depart from the enforcement practice followed under the Clause and section 1738....

*Id.*, 814 F.2d at 690–91 (citations omitted; note 8, containing legislative history, also omitted).

It is beyond question that § 1738A itself provides no jurisdictional basis for a claim that its provisions are being violated. As Judge Boyle noted when concurring in *Meade v. Meade*, 812 F.2d 1473, 1482 (4th Cir.1987):

> Like the Full Faith and Credit Clause, the PKPA merely instructs state courts in their relations with each other. It does not set up the federal courts as a referee. It is hard to understand how the PKPA can ordain federal jurisdiction when the Full Faith and Credit Clause does not.

The other statute which is urged as the source of subject matter jurisdiction, 28 U.S.C. § 1331, is similarly unavailing. The statute provides:

> The district courts shall have original jurisdiction of all civil actions arising under the Constitution, laws or treaties of the United States.

It has been settled for some time that the invocation of the Full Faith and Credit Clause "does not make a case arising under the Constitution or laws of the United States." *Minnesota v. Northern Securities Co.*, 194 U.S. 48, 72, 24 S.Ct. 598, 605, 48 L.Ed. 870 (1904); *Rogers v. Platt*, 814 F.2d at 690. Precisely what "arising under" means has been termed the "most difficult single problem in determining whether federal question jurisdiction exists...." 13B Wright, Miller & Cooper, *Federal Practice and Procedure*, § 3562 (1984). That assessment has been borne out in this context. Basically, this is a custody dispute between the plaintiff and the defendants. The dispute is governed by state law. However, one aspect of the dispute, a determinative one if the courts of Wisconsin and California adhere to the positions they have followed, is where the dispute ought to be resolved. A federal law, 28 U.S.C. § 1738A, purports to provide

the answer to that aspect of the dispute. That much cannot be questioned. What is questionable is whether the existence of that statute makes this case one which arises under federal law.

The courts which have answered that question in the affirmative have done so by concluding that since Congress intended to resolve jurisdictional questions arising in custody disputes, Congress also must have intended to have some tribunal decide which of two states asserting jurisdiction was correct. The decision in *Flood v. Braaten*, 727 F.2d at 310–12, is illustrative. The Court conceded that the language of the statute provided no assistance, and that the legislative history was inconclusive. It was clear to the *Flood* Court that Congress did not intend federal courts to become enmeshed with substantive custody determinations, nor even with the enforcement of custody decrees, but the Court found a role for federal courts nevertheless:

> By enacting one set of rules binding all the states, Congress sought to eliminate the inconsistency and close the loopholes that encouraged child snatching under the old system in which each state exercised unreviewable power to modify decrees. Absent some tribunal capable of enjoining violations of the strict and uniform requirements of § 1738A, the Congressional policy would be thwarted.
>
> \* \* \* \* \* \*
>
> ... The Congressional sponsors of § 1738A believed that the need for nationwide uniformity in the rules of custody jurisdiction justified exercising federal power to compel interstate cooperation.... Thus Congress instituted a new concept of custody jurisdiction. Had it wanted to leave compliance with these stricter provisions to the unpoliced discretion of the states, it is doubtful whether it would have acted at all.
>
> \* \* \* \* \* \*
>
> We cannot believe that Congress intended to render § 1738A virtually nugatory by so restricting the availability of a federal forum that state compliance with

the legislation would become optional. Rather, we are persuaded that in limited circumstances of noncompliance with § 1738A, federal district court intervention is permissible. In § 1738A, Congress unequivocally and mandatorily imposed federal duties on the states—"The appropriate authorities of every state shall enforce ..." The general grant of subject matter jurisdiction, 28 U.S.C. § 1331 (Supp. V 1981), permits federal district courts to hear claims that federal rights have been infringed. Altogether denying parents a district court forum for lawsuits claiming violation of rights under § 1738A would come close to judicial repeal of those statutory rights. "To take away all remedy for the enforcement of a right is to take away the right itself."

*Id.* (Citations omitted.) Thus, without ever addressing how such disputes "arise under" federal law, the Court approved the invocation of subject matter jurisdiction for its salutory benefits. In essence, the Court decided that there must be federal jurisdiction because it is needed.

However, as stated in *Rogers v. Platt*, the result reached by those circuits that have exercised subject matter jurisdiction is not entirely beneficial even if jurisdictional niceties are ignored. All of these courts have recognized that the PKPA was not designed to allow federal courts to tangle with substantive custody decisions. They have all assumed, as plaintiff does here, that federal courts would only be concerned with jurisdictional matters. Judge Silberman's opinion in *Rogers* lucidly shows that federal courts will often, if not usually, be required to decide the jurisdictional questions in light of facts that consistently arise in custody disputes. Under § 1738A(c), a custody determination is consistent with the PKPA, and is accorded full faith and credit, if the state making such a decision has jurisdiction under its own law *and* if the state is the child's "home state" as defined in subsection (b)(4). However, if the "home state" analysis fails to provide the easy answer,[4] as it often will when two

---

4. Plaintiff suggests that this is an easy case because California is obviously Ashley's home state. It is apparent, however, that subject mat-

ter jurisdiction does not turn on that question. At any rate, the Court suspects that the question of Ashley's home state will not be so easy. Per-

states have come to diametrically opposed conclusions, then a court must resort to the following parts of subsection (c)(2) which require findings as to the child's best interests, significant connections with a state by the child and one of the contestants, the availability in a state of substantial evidence concerning the child's future welfare, the existence of an emergency because of child abuse, and abandonment. It is thus clear that the question of which state may properly assert jurisdiction under the PKPA is not one which may be neatly packaged in a legal brief, but is likely to be fraught with factfinding identical to that now exclusively the province of state family courts.

The cases decided after *Flood* are even less persuasive. *DiRuggiero*, 743 F.2d at 1015, merely follows *Flood*. The Fifth Circuit in *Heartfield v. Heartfield*, 749 F.2d at 1140–41, also followed *Flood* in concluding:

... that in situations such as this where courts of two different states assert jurisdiction over a custody determination, federal district court intervention is proper and in fact necessary to enforce compliance with § 1738A.

*Id.* at 1141. The Fourth Circuit, in *Hickey v. Baxter*, 800 F.2d at 431, simply cited *Flood, Heartfield*, and *McDougald v. Jenson*, 786 F.2d 1465 (11th Cir.1986), without further analysis in reversing a District Court dismissal for lack of subject matter jurisdiction. The Fourth Circuit in *Meade v. Meade*, 812 F.2d at 1477, relied on *Hickey* in affirming a district court decision to exercise jurisdiction.

Only the Eleventh Circuit in *McDougald* faced the question of whether a claim such as this "arises under" federal law. The Court recognized that a suit on a judgment in state court is not brought within federal subject matter jurisdiction by reliance on constitutional or statutory full faith and credit. *McDougald*, 786 F.2d at 1479. However, the Court continued:

In section 1738A, however, is found not only the right to enforcement of one state court's custody decree in the courts

of every other state, but also detailed federal standards that must be met with respect to the decree sought to be enforced before the federal statutory right to enforcement in another state may be exercised.

*Id.* at 1480. The Court continued that to be entitled to relief a plaintiff must show that the state court judgment complied with the PKPA. *Id.* In this way a plaintiff would overcome the well settled principle that federal question jurisdiction cannot be grounded on the expedient of anticipating the defendant's defense. *See*, for example, *Louisville & Nashville R. Co. v. Mottley*, 211 U.S. 149, 29 S.Ct. 42, 53 L.Ed. 126 (1908). From this unexceptionable proposition, however, the Court concluded:

Because the plaintiff's well-pleaded complaint in a coercive action seeking enforcement of a foreign custody decree would establish that "in order for the plaintiff to secure the relief sought he will be obliged to establish both the correctness and the applicability to his case of a proposition of federal law," federal question jurisdiction over such an action would exist. We therefore find federal question jurisdiction to exist over an action seeking a declaratory judgment determining the rights of the parties to such a suit.

*Id.* (Citation omitted.) In other words, because Congress has supplied the substantive rule for state court jurisdictional decisions, a case "arises under" federal law after the state court acts contrary to the federal law.

While the *McDougald* court, at 786 F.2d at 1479, pretended to rely on *Gully v. First National Bank in Meridian*, 299 U.S. 109, 57 S.Ct. 96, 81 L.Ed. 70 (1936), it failed to accord that decision a careful reading. As Judge Boyle, concurring in *Meade*, 812 F.2d at 1480, pointed out, *Gully* stands for the proposition that, when rights or duties are created by state law, as they are here, the fact that federal law must also be

haps her status as a dependent of a member of the Armed Forces ought to have a bearing on

that question.

followed is of no jurisdictional significance. *Gully*, which involved an attempt by the State of Mississippi to tax the assets of a federally chartered bank, where the power to do so was granted by federal law, clearly stated:

> Not every question of federal law emerging in a suit is proof that a federal law is the basis of the suit. The tax here in controversy, if valid as a tax at all, was imposed under the authority of the State of Mississippi. The federal law did not attempt to impose it or to confer upon the tax collector authority to sue for it. True, the tax, though assessed through the action of the state, must be consistent with the federal statute consenting, subject to restrictions, that such assessments may be made.... It must also be consistent with the Constitution of the United States.... If there were no federal law permitting the taxation of shares in national banks, a suit to recover such a tax would not be one arising under the Constitution of the United States, though the bank would have the aid of the Constitution when it came to its defense.... That there *is* a federal law permitting such taxation does not change the basis of the suit, which is still the statute of the state, though the federal law is evidence to prove the statute valid.

> \*　　\*　　\*　　\*　　\*　　\*

> Here the right to be established is one created by the state. If that is so, it is unimportant that federal consent is the source of state authority. To reach the underlying law we do not travel back so far. By unimpeachable authority, a suit brought upon a state statute does not arise under an act of Congress or the Constitution of the United States because prohibited thereby.... With no greater reason can it be said to arise thereunder because permitted thereby.

*Gully*, 57 S.Ct. at 99. In this case the right to be established, custody, is created by the state. The fact that § 1738A provides substantive limits to a state's authority does not substitute federal law as the source of the right. Quite simply, this case does not arise under the PKPA within the meaning of 28 U.S.C. § 1331 if *Gully* is still good law. It is, as *Gully* was recently reviewed and approved in *Franchise Tax Board v. Construction Laborers Vacation Trust*, 463 U.S. 1, 12, 103 S.Ct. 2841, 2847–48, 77 L.Ed.2d 420 (1983).

Further support for this conclusion, Judge Silberman decided in *Rogers v. Platt*, was to be found in *Merrell Dow Pharmeceuticals Inc. v. Thompson*, —— U.S. ——, 106 S.Ct. 3229, 92 L.Ed.2d 650 (1986). In *Merrell Dow*, the plaintiff filed a state court action for damages suffered by the ingestion of a drug produced by the defendant, who removed to federal court. One count of the complaint alleged that the drug was misbranded in violation of the Federal Food, Drug and Cosmetic Act, 21 U.S.C. § 301 et seq. *Id.*, 106 S.Ct. at 3231. It was settled that Congress intended no private right of action with its enactment. *Id.* at 3234. The question was whether under these circumstances it could be said that the claim arose under federal law within the meaning of 28 U.S.C. § 1331. The Court answered in the negative, addressing the defendant's strongest claim on federal jurisdiction as follows:

> We simply conclude that the congressional determination that there should be no federal remedy for the violation of this federal statute is tantamount to a congressional conclusion that the presence of a claimed violation of the statute as an element of a state cause of action is insufficiently "substantial" to confer federal-question jurisdiction.

*Id.* at 3236. There is no room for inference that Congress intended to create a federal cause of action under the PKPA either. Even the courts finding subject matter jurisdiction recognize that there are no grounds in the law itself or in the legislative history to infer congressional intent to create a federal cause of action. *See*, for example, *McDougald*, 786 F.2d at 1477. In *Flood*, the Court conceded that Congress'

rejection of a proposal to statutorily overrule the family law exception to diversity jurisdiction indicated an intent "to prevent federal district courts from becoming a forum of first resort when an out-of-state parent disregards a custody decree." 727 F.2d at 310–11.

The Court concludes that Judge Silberman's reliance on *Merrell Dow* was appropriate. It stands for the proposition that there is no federal jurisdiction when Congress "affirmatively determines that there should be no private federal cause of action." *Rogers*, 814 F.2d at 688. As Judge Silberman pointed out:

> Congress is certainly free to create federal rights or duties and provide for their enforcement outside the federal district courts—in effect to modify section 1331 —as long as it stays within any constitutional limits, which are by no means clearly identified. Congress can, for example ... provide rules of decisions for state courts ... which are, of course, bound by the supremacy clause to enforce federal law.

*Id.* (Citations omitted.) It is evident from the wording of the statute and the legislative history discussed in all of the cases addressing the statute that there is no evidence that Congress intended to create a federal cause of action. The Congressional Findings and Declaration of Purposes for Parental Kidnapping Prevention Act of 1980 (Section 7 of P.L. 96–611) includes among its findings that there exist inconsistent and conflicting jurisdictional decisions in the courts of the various states, and also that such states fail to give full faith and credit to the decisions of other jurisdictions. It also states:

> For those reasons it is necessary to establish a national system for locating parents and children who travel from one jurisdiction to another and are concealed in connection with such disputes, and to establish national standards under which the courts of such jurisdictions will determine their jurisdiction to decide such disputes and the effect to be given by each

such jurisdiction to such decisions by the courts of other such jurisdictions.

(Emphasis supplied.) The underlined language above is as important for what it does not say as for what it does say. Congress certainly saw the need for national standards on the question which is presented by this dispute, but there is no indication whatsoever that Congress meant to interject lower federal courts into the process. State courts are obligated to follow federal law. It may be here agreed that either California or Wisconsin is not following federal law, since § 1738A contemplates that only one state court may exercise custody jurisdiction in conformity with the law. Plaintiff would have this Court act as a referee, or exercise quasi-appellate jurisdiction over the actions of a Wisconsin state court. This Court concludes that such an extraordinary role cannot be exercised without an express grant of power. To lightly infer that kind of judicial power from a statute which is silent, and from a legislative history which suggests a contrary intent, would be truly remarkable.

The alternative for plaintiff is to exhaust state appellate procedure and appeal to the Supreme Court. This is always required when one state fails to give full faith and credit to a decision of another state. If Congress intended a different result, it could have easily made recourse to federal courts explicit. Instead it adopted a "full faith and credit approach" to a problem which is national in scope. By doing so it foreclosed federal subject matter jurisdiction under long-standing and consistently reaffirmed precedents.

■ Even if it could be said that subject matter jurisdiction existed, the above analysis shows conclusively that the complaint fails to state a claim. The Ninth Circuit in *Thompson v. Thompson*, 798 F.2d 1547 (9th Cir.1986), felt compelled to exercise subject matter jurisdiction by *Bell v. Hood*, 327 U.S. 678, 66 S.Ct. 773, 90 L.Ed. 939 (1946). *See Thompson*, 798 F.2d at 1550. This conclusion was justly criticized by Judge Silberman in *Rogers v.*

*Platt,* 814 F.2d at 691–92. But the extensive analysis of the legislative history by the *Thompson* court is persuasive that no federal cause of action was created and, thus, a litigant cannot state a claim for relief under federal law. Particularly pertinent is the position taken by the Department of Justice concerning the various approaches to custody problems then being addressed by Congress. The Department recommended that Congress adopt the proposal embodying § 1738A precisely because it would not increase the workload of federal courts, and Congress acted in accordance with that recommendation. *Thompson,* 798 F.2d at 1556–57, and n. 16.

A common sense reading of § 1738A leads to the conclusion that it creates no cause of action whatsoever. It merely buttresses a state court custody judgment conforming to § 1738A with the force of federal law when seeking to enforce that judgment in another state. However, the enforcement action itself is a state claim, not a federal one. Neither logic, the statute itself nor its legislative history suggests that § 1738A was designed to accomplish more.

Accordingly, the Court concludes that it lacks subject matter jurisdiction over plaintiff's complaint and, alternatively, that plaintiff's complaint fails to state a claim for relief.

### ORDER

IT IS ORDERED that defendants' motion to dismiss is GRANTED with costs.